# Christian, Appellant, v. Philadelphia Rapid Transit Company.

*Master and servant—Master's liability for servant's torts—Unauthorized assault by servant—Nonsuit.*

1. For a wilful or intentional trespass by an employee outside of the line of his duty under his employment, the employer is not responsible, even though it be committed while the servant is in the exercise of his employment.

2. In an action of trespass to recover damages from a street railway company for personal injuries sustained by plaintiff in consequence of being shot by one of defendant's servants, where it appeared that such servant was employed as a "lieutenant" of strike breakers, and was assigned to assist a depot superintendent, at a depot; that while he was riding on a car, a stone of considerable size was thrown by an unknown person which passed in close proximity to his person; that he got off the car, with a revolver in his hand, and fired at a small group of young men who were walking peaceably along the street, and hit plaintiff in the back, the trial judge correctly entered a nonsuit, in the absence of evidence from which it could be inferred that the employee had been assigned to duty on the car, that he was employed to guard defendant's property, that he was a special police officer in defendant's employ or that the revolver had been given him by defendant.

MR. JUSTICE MESTREZAT dissents.


Argued Jan. 13, 1914. Appeal, No. 245, Jan. T., 1913, by plaintiffs, from judgment of C. P. No. 4, Philadelphia Co., June T., 1910, No. 1682, of nonsuit in case of James Christian, Jr., by His Next Friend and Father, James Christian, and James Christian v. Philadelphia Rapid Transit Company. Before MESTREZAT, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ. Affirmed.


Trespass to recover damages for personal injuries. Before WILLSON, P. J.

The opinion of the Supreme Court states the facts.

The trial judge entered judgment of nonsuit, which

the court in banc subsequently refused to take off. Plaintiffs appealed.

*Error assigned* was in refusing to take off the nonsuit.

*Bertram D. Rearick,* with him *Joseph Moss,* and *Bernard A. Illoway,* for appellants.

*Russell Duane,* for appellee.

OPINION BY MR. JUSTICE POTTER, March 9, 1914:

This is an appeal from the refusal of the court below to take off a judgment of compulsory nonsuit. Upon the trial in the court below it appeared that on the evening of March 22, 1910, the plaintiff in company with three other young men was walking south on Amber street below York street in Philadelphia, when he was shot in the back and seriously wounded. It was shown that the bullet was fired by one Theodore Fritz who was in the employ of the defendant company. Some of the employees of the company were at the time on a strike, and Fritz had been employed as an inspector or assistant to the superintendent, in assigning new men to the cars. He was acquainted with these new men, who were strangers to the division superintendent. The inspectors were popularly known as lieutenants of strike breakers and some of them had badges with the word "Lieutenant" on them. When Fritz came to Philadelphia he was assigned to the depot at Twenty-sixth street and Allegheny avenue, as an assistant to the superintendent at that depot. It appears from the testimony that he was never employed or assigned to the duty of guarding the company's property, either at the barn or on the cars on the street. No revolver was given to him by defendant, and the officer who engaged him testified that he did not know that Fritz was carrying one. On the evening in question, March 22, 1910, Fritz was riding on one of defendant's cars going east on

York street towards Amber street. He was not in uniform, but wore street clothes, with a derby hat. He may have had a badge on. He was on the front platform together with the motorman and a police-officer, who had been assigned to duty on the car because of the strike. As the car approached Amber street a stone of considerable size was thrown at it by some person unknown. The stone passed over Fritz's shoulder, but struck no one. The car was stopped at Amber street, Fritz jumped off with the revolver in his hands, the switchman followed him with the switch-iron, and the policeman came after them. The latter in his testimony said: "Going south on Amber street on the west side there were four or five young fellows, and they were walking along peaceably, talking and chatting, and without a bit of warning this fellow (Fritz) opened up and fired right on them." This witness also stated that there was no disturbance in the neighborhood, nor any sign of riot, and aside from the stone being thrown, nothing unusual had happened on the trip; that things had quieted down by that time, and that there was no occasion for any shooting. He further stated that he did not see any one of the young men throw the stone, or see anything to suggest that they had anything to do with it. Fritz fired two shots, and one of them took effect in plaintiff's back, as he testified. At the close of the evidence for the plaintiff, a compulsory nonsuit was entered by the court below, upon the ground that in doing the shooting, Fritz was not acting within the line of his employment by the defendant company. The court in banc subsequently refused a motion to take the nonsuit off. Plaintiff has appealed. The rule of law governing the question here raised is well settled in this State. It was expressed by Mr. Justice MITCHELL in McFarlan v. Railroad Co., 199 Pa. 408, as follows: "For a wilful or intentional trespass by an employee, outside of the line of his duty under his employment, it is settled that the employer is not responsible, even though it be

committed while the servant is in the exercise of his employment. But in the latter case, its wilful and separate character must appear." This statement of the rule was quoted with approval by Mr. Justice STEWART in Berryman v. Penna. R. R. Co., 228 Pa. 621. The rule was again formulated by Mr. Justice MESTREZAT, in Brennan v. Merchants & Co., Inc., 205 Pa. 258, (p. 261) as follows: "A master is liable for the tortious acts of his servant done in the course of his employment and within the general scope of his authority. His presence or absence when the act is performed, and whether it is done with or without his direct authority, does not affect the question of the master's liability to the party injured. If, however, the wrongful act, resulting in the injury, was done by the servant outside of his employment, and not in the execution of his master's business, but to gratify the servant's personal ill will or malice, the master is not liable although the servant was at the time in his employment." Under the rule thus stated, it is clear that in order to entitle plaintiff to have his case submitted to the jury it must have been shown, (1) that Fritz was in the exercise of his employment at the time when the shooting occurred. (2), that the shooting was not outside of the line of his duty under his employment. A careful examination of the evidence shows that Fritz was not in the exercise of his employment at the time. Defendant's superintendent who was called on behalf of plaintiff, testified that Fritz "was employed as an inspector or assistant to the superintendent"; that he was engaged to perform these duties because of his acquaintance with the new men; that his duties were to assist the superintendent in assigning men to the cars, getting them out on time, checking them up, and other things of that character; that he was not employed or sworn in as special officer, and that he was given no badge, unless it was one with "Lieutenant" on it, to distinguish him from the other new men; that he was assigned to the depot at Twenty-sixth street and Al-

legheny avenue, "as assistant to the superintendent at
that depot," and was not "employed or assigned to the
duties of guarding the company's property, either at the
barn or on the cars on the street at any time"; that
Fritz "had no business that carried him outside of his
duty at Twenty-sixth street and Allegheny avenue";
that defendant did not employ private persons to pro-
tect its cars but relied entirely upon the police depart-
ment for protection.   There was an attempt upon the
part of plaintiff to show that defendant had furnished
Fritz with a revolver with which the shooting was done;
but the evidence failed to show any such thing.   It was
shown that defendant had purchased seven dozen thirty-
eight calibre revolvers, in February and March, 1910,
but the revolver used by Fritz was thirty-two calibre.
The witness Johnson, who employed Fritz, testified that
so far as he knew, no revolver was given to Fritz by the
company, nor by any of its officers, and that he had no
knowledge that Fritz was carrying a revolver.   It also
appears from the evidence that James Calhoun a police-
man of the City of Philadelphia, was assigned to duty
on the car on which Fritz was riding, "to protect it
......and the motorman and conductor in case of
trouble."   He rode on the front platform in company
with Fritz and the motorman.   Fritz wore no uniform,
but "Just wore street clothes with a derby hat."   The evi-
dence shows definitely that the duties for which Fritz
was engaged were to be performed at the car barn or
depot, that he had no duties that required him to ride
on the cars, and that it was no part of his employment
to guard the cars or the men who operated them.   A
policeman had been provided to guard the car upon
which Fritz was riding at the time of the shooting, and
no reason was shown why Fritz should have undertaken
to act as a guard at the time.   The evidence was there-
fore clearly insufficient to be submitted to the jury on
the question of whether Fritz was acting within his em-
ployment at the time of the shooting.   Even had there

been any evidence of such employment, it was not part of his duty to leave the car, rush into a side street, and without warning or the giving of any order to stop, to shoot in the back a boy who was at the time quietly walking away from him. The decision in Berryman v. Penna. R. R. Co., 228 Pa. 621, is authoritative as to this feature. That was also a case of shooting, by a private policeman employed to keep order around a railroad station. He followed plaintiff in that case, who had just alighted from a train, on which he had been a passenger, and wantonly and without provocation shot him as he was leaving the station. It was held that the railroad company was not responsible for his act. Another similar case is that of Greb v. Penna. R. R. Co., 41 Pa. Super. 61; there the baggage master and the conductor of the train made an assault on plaintiff and his brother, who had been passengers, and were still on the station platform. The Superior Court, by RICE, P. J., held that the act was not within the scope of the employment of the men who committed the assault, and therefore no recovery could be had against the railroad. In Rudgeair v. Traction Co., 180 Pa. 333, the motorman alighted from his car and assaulted the driver of the wagon, which was blocking the track, and it was held that the company could not be held responsible for his action in so doing. Certainly with much less propriety, could it be maintained in the present case that the defendant company is liable for the action of Fritz, who fired the shot which did the damage. A few days ago, this court handed down an opinion in the case of Drexler v. Philadelphia Rapid Transit Co., 244 Pa. 18, which was an action against this same defendant growing out of the same troubled condition of affairs. It was there sought to hold the defendant company responsible for the act of one, who while standing on the rear platform of a car, fired two shots from a pistol, injuring the plaintiff in that case. The trial judge entered a compulsory nonsuit upon the ground that there was no evidence show-

ing that the man who fired the shot did so as the representative of the company, or in the performance of any duty which had been imposed upon him as an employee. He was, however, in the employ of the company as a motorman, but at the time, he was not operating the car upon which he was riding. This court affirmed the action of the court below in refusing to take off the nonsuit. Neither as to the principle upon which it was based, nor in the application of that principle to the facts, can the question there decided be distinguished from the question involved in the present case. Here the facts are not in dispute. The testimony as we have endeavored to point out in considerable detail, shows clearly that the shooting was entirely outside of the scope of the employment of Fritz, and that he was not at the time engaged in the discharge of any duty for which he had been employed. The judgment of nonsuit was therefore rightfully entered by the trial judge, and the court below very properly refused to take it off.

The assignment of error is overruled, and the judgment is affirmed.

MESTREZAT, J., dissents.